# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| WANDA FAYE SAID, <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 1:25-CV-00220-CAB <br><br> JUDGE CHRISTOPHER A. BOYKO <br><br> MAGISTRATE JUDGE DARRELL A. CLAY <br><br> REPORT AND RECOMMENDATION |

## INTRODUCTION

Plaintiff Wanda Faye Said challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB).[1] (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated Feb. 5, 2025). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Said applied for DIB on April 27, 2022. (Tr. 165). She claimed disability beginning April 1, 2020 due to depression, anxiety, degenerative disc disease, chronic obstructive pulmonary disease (COPD), right rotator-cuff-tear-repair surgery, left rotator-cuff tear, sleep apnea, high cholesterol, and high blood pressure. (Tr. 58). After the claim was denied initially and on

---

[1] Ms. Said also applied for and was denied supplemental security income (Tr. 159, 78) but she challenges only the denial of DIB (ECF #1 at PageID 1). I limit my discussion accordingly.

1

reconsideration, Ms. Said requested a hearing before an administrative law judge. (Tr. 57, 67, 102). On October 2, 2023, Ms. Said (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 38-56). On December 19, 2023, the ALJ determined Ms. Said was not disabled. (Tr. 19-31). On August 24, 2023, the Appeals Council denied Ms. Said's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. § 404.981). On February 5, 2025, Ms. Said timely filed this action. (ECF #1).

FACTUAL BACKGROUND

I.   **Personal and Vocational Evidence**

Ms. Said was 49 years old on her alleged onset date and 51 years old at the hearing. (*See* Tr. 58). She completed tenth grade and has past relevant work experience in a composite position of a fast-food services manager and fast-food cook. (Tr. 52).

II.  **Relevant Medical Evidence**

In May 2020, Ms. Said slipped and fell on her left knee and hands. (*See* Tr. 310-11). She reported knee pain and visited the emergency department after the throbbing and constant pain kept her awake overnight. (*Id.*). Ms. Said's lower-back pain progressively worsened and by December 2021, she reported the pain radiating out from her back to adjacent areas. (Tr. 275). Ms. Said also reported vertigo associated with moving her head, looking up and down, and changing position for which she was prescribed medication. (Tr. 275, 278).

In April 2022, an x-ray of Ms. Said's lower spine revealed "Grade 1 anterolisthesis at L5-S1 is most likely degenerative. No radiographic evidence of instability within constraints imposed by habitus." (Tr. 439-40). That same month, she reported taking naproxen and Lidoderm for her pain, but with minimal relief. (Tr. 266).

In June 2022, Ms. Said returned to her physician complaining of back and right-posterior-thigh pain that worsened with standing, sitting, walking, and laying. (Tr. 551-52). Imaging of her hip and back was ordered and Ms. Said was referred to physical therapy. (Tr. 555). The x-ray of her hip yielded normal findings. (Tr. 564-65). A September 2022 x-ray of her shoulder found mild degenerative disease. (Tr. 585).

Ms. Said began weekly physical therapy in April 2023. (Tr. 806). In the first session, she rated her back and hip pain at a four out of ten and reported difficulty performing various daily activities. (Tr. 808). In a May 2023 session, she reportedly could "tolerate [a] full exercise program . . . without reports of increased pain" and did not report any pain when the session ended. (Tr. 643). At the same time, she demonstrated decreased mobility and weaker muscles. (Tr. 644). Also that month, she sought treatment for swelling in her left leg and varicose veins after intermittent success with compression socks. (Tr. 845).

Ms. Said's documented weight ranged between 243 to over 260 pounds and she had a body-mass index ranging from 50 to 59.9. (*See, e.g.*, Tr. 275, 302, 439, 535, 550, 554, 579, 609, 611, 617, 658, 822).

III.    Relevant Opinion Evidence

On August 31, 2022, Ms. Said was psychologically evaluated by Michael Faust, Ph.D., in connection with her disability application. (Tr. 577-82). Dr. Faust diagnosed Ms. Said with major depressive disorder. (Tr. 581). Dr. Faust opined Ms. Said can understand simple questions and instructions, but she may have mild deficits in carrying out instructions; can be expected to struggle with mild attention deficits and a lack of persistence and a slower work pace; and her depression may affect her ability to respond to work pressures. (Tr. 581-82).

State agency medical consultant Leon Hughes, M.D., and psychological consultant Courtney Zeune, Psy.D., reviewed Ms. Said's file as part of the initial evaluation of her disability application. (Tr. 62-65). On September 30, 2022, Dr. Hughes opined Ms. Said had no exertional limitations; could stand, walk, or sit for six hours in an eight-hour workday; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, and crouch; is limited in reaching; and must avoid all unprotected heights and hazardous machinery and even moderate exposure to pulmonary irritants. (Tr. 62-63). On September 24, 2022, Dr. Zeune opined Ms. Said was moderately limited in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (Tr. 60-61, 63-65). On February 21, 2023, state agency medical consultant Leslie Green, M.D., reviewed updated medical records and affirmed the medical findings on reconsideration but added Ms. Said must avoid concentrated exposure to extreme temperatures, humidity, and vibrations. (Tr. 72-73). On March 4, 2023, state agency psychological consultant David Dietz, Ph.D., affirmed the psychological findings. (Tr. 73-74).

**IV.     Relevant Testimonial Evidence**

Ms. Said explained she cannot work because her back pain worsened after her fall such that she could no longer walk, stand, sit, or squat. (Tr. 46). The pain is primarily in her lower back and extends to her hips. (Tr. 47). She also experiences symptoms of lightheadedness and dizziness similar to vertigo. (Tr. 48). The varicose veins in her legs cause excruciating pain while wearing pants and further limit her ability to stand or walk. (*Id.*). She estimated she can stand in one place for about three to five minutes or walk for about a quarter of a block before needing a break. (Tr. 47). Walking can be so painful for her that it can make her tearful, angry, and frustrated. (Tr. 48).

4

Ms. Said loves the outdoors and gardening, but she can no longer tend her garden due to pain. (Tr. 49). She requires her husband's assistance in getting up and down while bending to plant flowers. (*Id.*).

Ms. Said attended nine weeks of physical therapy where she could perform the exercises in the office, but her pain would slowly return, starting as she returned to her car. (Tr. 49). She keeps up with her exercises daily, though her pain returns just the same. (Tr. 49-50).

At the time of the hearing, her physicians were still deciding how to treat her varicose veins. (Tr. 50-51). Her doctors had completed diagnostic testing and advised her to wear compression socks in the meantime. (Tr. 51).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step evaluation process found at 20 C.F.R. § 404.1520 to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?
2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?
3. Does the severe impairment meet one of the listed impairments?
4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5

> 5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined that despite working after the claimed disability date, Ms. Said's work did not constitute "substantial gainful activity." (Tr. 19). At Step Two, the ALJ identified "clinical depression, anxiety disorder, degenerative disc disease, chronic obstructive pulmonary disease, arthritis from remote right rotator cuff rear repair surgery, left rotator cuff tear, and sleep apnea" as severe impairments. (Tr. 20). At Step Three, the ALJ found Ms. Said's impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 20-22). At Step Four, the ALJ determined Ms. Said had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except: She can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can frequently balance, stoop, kneel, and crouch. She can frequently reach frontally, laterally, and overhead bilaterally. She should avoid jobs that require frequent exposure to respiratory irritants. She must avoid all exposure to work in unprotected heights and operating dangerous machinery such as power saws and jackhammers. She can understand, remember, and apply information to complete simple instructions in a routine work

6

>environment and maintain concentration, persistence, and pace for work tasks that are routine in nature and do not require hourly production quotas. She can interact with the general public, coworkers, and supervisors for work related tasks and purposes such as asking questions, clarifying instructions, gathering information, helping others, and using hand gestures.

(Tr. 22-23) (cleaned up). The ALJ then found Ms. Said could not perform her past relevant work. (Tr. 29). At Step Five, the ALJ found Ms. Said could perform other work in the national economy, including as a routing clerk, marker, and collator operator. (Tr. 30-31). Thus, the ALJ concluded Ms. Said was not disabled. (Tr. 31).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the

7

evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters*, 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## Discussion

I.  Evaluation of obesity as a severe impairment at Steps Two and Four

Ms. Said initially argues the ALJ erred in evaluating her obesity. First, the ALJ erred at Step Two by concluding her obesity was not a severe impairment using the improper standard that it

did not "cause another impairment or combination of impairments to rise to the listing-level severity." (ECF #10 at PageID 930-32). Then, the ALJ carried over that error when crafting the RFC at Step Four by not evaluating the impact of her obesity on her ability to work and used another improper standard that Ms. Said's obesity must cause her to be "totally and permanently disabled." (*Id.* at PageID 932-33; ECF #15 at PageID 959). She argues the error was harmful because a proper evaluation would limit her to sedentary work and thus a disability finding. (ECF #11 at PageID 932). The Commissioner responds that the ALJ was not obligated to separately explain how Ms. Said's obesity affected her ability to work because the ALJ relied on expert reports that considered her obesity and, following those reports, the ALJ limited her to a reduced range of light work. (ECF #13 at PageID 947-50).

Social Security Ruling (SSR) 19-2p describes how an ALJ evaluates a claimant's obesity at the different steps in the sequential disability analysis. *See Soc. Sec. Ruling 19-2p; Titles II & XVI: Evaluating Cases Involving Obesity*, 2019 WL 2374244 (May 20, 2019). At Step Two, obesity is considered a severe impairment "if the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities." *Id.* at *3. The effect of obesity on a claimant's functioning is analyzed on a case-by-case basis and no specific weight, body-mass index, or descriptive terms by a medical source establish obesity as a severe impairment. *Id.* at *4. At Step Four, the ALJ "must consider the limiting effects of obesity when assessing a person's RFC" and "explain how we reached our conclusion on whether obesity causes any limitations." *Id.* In so doing, the ALJ must "consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments." *See id.*

9

Ms. Said argues the ALJ's analysis fell short of those guidelines. But, even if the ALJ's analysis regarding obesity was inadequate, to warrant remand Ms. Said must also show how her obesity, alone or in combination with her other impairments, limited her functioning to a degree inconsistent with the RFC. *See Hardie v. Comm'r of Soc. Sec.*, No. 5:23-cv-1848, 2024 WL 2941165, at *7 (N.D. Ohio Apr. 18, 2024) (collecting cases), *report and recommendation adopted*, 2024 WL 3370539 (N.D. Ohio July 11, 2024). Ms. Said's arguments only briefly suggest that had the ALJ analyzed her obesity properly, the ALJ *may* have limited her to the sedentary exertion level, which would have resulted in a disability finding. (*See* ECF #11 at PageID 932; ECF #15 at PageID 960).

Although this argument raises the possibility that an ALJ might find her limited to a sedentary level, it does not show *how* her functioning is limited to that level. This lack of developed argument is particularly problematic as the prior administrative medical findings conclude that Ms. Said can perform a limited range of light work. (*See* Tr. 62-63, 72-73).

I thus decline to recommend remand on this basis.

II.     Evaluation of Dr. Faust's medical opinion

Next, Ms. Said argues the ALJ erred at Step Four by not meaningfully discussing the supportability of Dr. Faust's opinion and not discussing its consistency at all. (ECF #10 at PageID 935-37). She argues the error was harmful because Dr. Faust opined Ms. Said would have limitations in carrying out instructions, maintaining pace, staying on-task, and persisting. (*Id.* at PageID 937). The Commissioner responds that the ALJ analyzed the opinion's supportability by characterizing it as vague and a one-time examination and the ALJ addressed consistency by referencing subsequent mental-status examinations that were discussed more fulsomely elsewhere

10

in the decision. (ECF #13 at PageID 953-54). Ms. Said replies that the Commissioner's argument goes beyond the decision and into the realm of post-hoc rationalization. (ECF #15 at PageID 961).

As part of the RFC assessment, the ALJ must review all medical opinions and explain their persuasiveness. *See* 20 C.F.R. § 404.1520c(b); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015). The ALJ considers five factors to determine persuasiveness: (1) supportability; (2) consistency; (3) the source's relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) the source's specialization; and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The regulations require that the ALJ "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions," the two most important factors. *See id.* § 404.1520c(b)(2). Consistency (the factor at issue) is "the extent to which the opinion is consistent with evidence from other medical sources and nonmedical sources in the claim." *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5853 (Jan. 18, 2017).

The ALJ's explanation should "generally include[] an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or prior administrative medical finding is with other evidence in the claim." *Id.* at 5859. The reasons for the ALJ's conclusions must be stated in a manner that allows the reviewing court to "trace the path of the ALJ's reasoning" from evidence to conclusion. *Stacey v. Comm'r of Soc. Sec.*, 451 F.App'x 517, 519 (6th Cir. 2011). But an ALJ need not specifically use the terms "supportability" or "consistency" so long as the analysis substantively engages with those factors. *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022). If the ALJ discusses both

11

consistency and supportability and substantial evidence supports the discussion, the Court may not disturb the ALJ's findings. *Paradinovich v. Comm'r of Soc. Sec.*, No. 1:20-cv-1888, 2021 WL 5994043, at *7 (N.D. Ohio Sept. 28, 2021), *report and recommendation adopted*, 2021 WL 5119354 (N.D. Ohio Nov. 4, 2021).

The ALJ analyzed Dr. Faust's opinion as follows:

Michael Faust, Ph.D., performed a consultative psychological exam on August 31, 2022. The claimant reported experiencing depression, sadness, irritability, anger, fighting with others, and difficulty sleeping. She described her typical mood as "depressed." She has lost interest in taking care of her appearance. She showers every 2 hours. She "sometimes" visits friends. She reports having crying spells. She experiences anxiety and panic attacks. She has a driver's license, and she can drive independently. She drinks "1 can or 2 glasses" of alcohol casually. She lives in her own home with her husband and "2 others." Her sleeping schedule varies. She does the laundry. She goes grocery shopping once per month. She enjoys sewing and making things. Exam noted she presented an adequate appearance and was dressed in clean, appropriate clothing. She presented with a constricted range of emotions and her mood did appear depressed. She answered all questions asked of her. She tended to give up easily on tasks due to viewing herself as limited and this lowered her overall task performance. She did not exhibit any difficulty with her memory. Speech was 100% intelligible in known and unknown contexts. She presented with a mildly constricted affect but remained pleasant and interactive. There was a sense of frustration over her physical struggles, and she appeared to emphasize her physical impairment. She presented with a mildly constricted affect, but she remained pleasant and interactive. She became more agitated as she spoke about her health issues. She denied any homicidal or suicidal ideations. She displayed no outward signs of anxiety, and she was calm. There were times when she because visibly more tense and agitated, particularly as she discussed her health issues. She did not display any signs of being distracted by internal or external stimuli. Thought processes were logical, linear, and reality bound. She showed no signs of guardedness, grandiosity, religiosity, suspiciousness, or paranoia. She was oriented x4. She has good insight and adequate judgment. The claimant was diagnosed with major depressive disorder, single episode, mild. Dr. Faust opined the claimant is able to understand simple questions and instructions, consistent with history of working at Burger King. She may have mild deficits carrying out instructions related to ongoing issue with depression. She exhibited mild attention deficits which were viewed as a function of her depression. She tried to persist at tasks but exhibited a slower work pace. She can be expected to struggle with mild attention deficits and lack of persistence, secondary to depressive disorder as well as a slower work pace. She denied difficult getting along with others when she worked in the past. She denied difficulty with anger control or

12

> aggression. The undersigned finds this opinion is not fully persuasive because it is a one-time examination. Furthermore, Dr. Faust used vague imprecise terminology and he did not properly quantify, and recent mental status examinations all show stability and non-disabling symptoms.

(Tr. 27-28) (citation omitted).

The ALJ applied the supportability factor to Dr. Faust's opinion by noting Dr. Faust conducted a one-time examination of Ms. Said and his opined limitations were vague, imprecise, and not quantified. The supportability factor refers to the extent of the objective medical evidence relied on and the degree of explanation given by the medical source. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5853; *Dallas v. Comm'r of Soc. Sec.*, No. 1:20-cv-1720, 2021 WL 5428827, at *11 (N.D. Ohio Oct. 26, 2021), *report and recommendation adopted*, 2021 WL 5416718 (N.D. Ohio Nov. 19, 2021).

An ALJ's classification of an opinion as vague goes to the supportability factor as it characterizes the degree of explanation given, though merely labelling an opinion vague is not enough analysis. *See Cari A. H-R. v. O'Malley*, No. 3:23-cv-678, 2025 WL 644279, at *7 (W.D. Ky. Feb. 27, 2025). While the ALJ could have quoted the limitations she thought "vague," "imprecise," or "not quantified," that would be unnecessary as each of Dr. Faust's three opined limitations included vague adjectives or expressed uncertainty, including "mild deficits" in following instructions, "can be expected to struggle" with attention, and "may impact her ability to respond to work pressures." (*See* Tr. 582).

The ALJ also noted that Dr. Faust's opinion is based on a "one-time examination." (Tr. 28). This assessment is directly germane to the factor of "the source's relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship." 20 C.F.R. § 404.1520c(c)(3). But there is

13

some overlap with the supportability factor as Dr. Faust's single examination pertains both to the extent of the objective medical evidence he relied on and his treating relationship with Ms. Said. Thus, while the fact Dr. Faust's opinion is supported by one examination is more directly related to the factor of the source's relationship to the claimant, it does also relate to the supportability factor. Regardless of which factor it is placed under, the ALJ substantively engaged with the persuasiveness factors in her brief analysis.

The ALJ did not name the consistency factor, but the discussion substantively engages with it. Again, consistency is the extent to which other sources and evidence reflect the same limitations described in the opinion. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5853; *Dallas*, 2021 WL 5428827, at *11. The ALJ wrote "recent mental status examinations all show stability and non-disabling symptoms," suggesting Dr. Faust's opinion is not consistent with those examinations to the extent he opined Ms. Said's condition is disabling. (*See* Tr. 28). The ALJ does not specify the mental-status examination findings that are stable and non-disabling, nor does the ALJ cite medical treatment records memorializing those unspecified findings. But the paragraphs preceding the ALJ's evaluation of Dr. Faust's opinion reflect largely normal findings that post-date Dr. Faust's opinion. (*See* Tr. 26-27). Reading the decision as a whole and with common sense, as the court must, *see Buckhanon ex rel. J.H. v. Astrue*, 368 F.App'x 674, 678-79 (6th Cir. 2010), the ALJ recounted mental-status examinations in March, April, June, and August 2023 and concluded "Telehealth mental status exam remains unchanged from June 20, 2023. The claimant was stable" and "[a]ll the mental health treatment records support" the mental limitations in the RFC. (*See* Tr. 26-27). Substantial evidence supports the ALJ's findings about the mental-status examinations in the summer of 2023 (*see* Tr. 608 (noting depressed mood, but

14

otherwise normal), 612-13 (normal findings with "good" mood), 616-17 (same), 828-29 (same)) and that her condition stabilized in June and August 2023 (*see* Tr. 617, 829).

Ms. Said argues that viewing the ALJ's discussion of these records as engaging with the consistency factor is a post hoc rationalization for the ALJ's brief one-phrase analysis. It is true that a reviewing court "cannot come and rewrite the ALJ's reasoning" or "offer a post hoc explanation for the ALJ's vague determination." *See Buck v. Comm'r of Soc. Sec.*, No. 3:22-cv-1071, 2023 WL 3978288, at *3 (N.D. Ohio June 13, 2023). But a reviewing court must also read the ALJ's decision as a whole and with common sense. *Buckhanon ex rel. J.H.*, 368 F.App'x at 678-79. Here, the decision explicitly referenced mental status examinations that were discussed in the immediately preceding paragraphs. (*See* Tr. 26-28). The court does not stray into an impermissible post hoc rationalization by referring back to examination results discussed a few paragraphs prior. While it may be preferable for the ALJ to have discussed which precise findings are inconsistent with the precise opined limitations or even cite to the relevant exhibits again, "that is not required so long as [the ALJ's] reasoning is apparent to the reader." *Buck*, 2023 WL 3978288, at *3. I thus decline to recommend remand on this basis.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: December 4, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).